UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STANLEY "DUKE" BENNETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 09-421-P-S |
| ) | |
| ROARK CAPITAL GROUP, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION TO DISMISS AND RECOMMENDED DECISION**

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (Docket # 27). On May 27, 2010, the United States Magistrate Judge filed with the Court his Recommended Decision (Docket # 43), which recommended the Defendants' Motion be granted as to Counts I and II of the Second Amended Complaint and otherwise denied. Plaintiffs filed their Objections to the Recommended Decision (Docket #s 45 & 46) on June 14, 2010. Defendants also filed their Objections to the Recommended Decision (Docket # 47) on June 14, 2010. Plaintiffs and Defendants each filed their respective Responses (Docket #s 52 & 53) to the other sides' Objections on July 9, 2010. On August 5, 2010, the Court held oral argument on the Objections.

**I.   LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint. Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004). In deciding such a motion, the Court must accept as true all well-

1

pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). The Court may also consider judicially noticeable facts. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (explaining the "narrow exception[s]" for consideration of documents outside the pleadings); see also F.R.E. 201.

The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation omitted). Thus, faced with a motion to dismiss, the Court must examine the factual content of the complaint and determine whether it can reasonably infer "that the defendant is liable for the misconduct alleged." Id. In distinguishing sufficient from insufficient pleadings, which is "a context-specific task," the Court must "draw on its judicial experience and common sense." Id. at 1950.

## II. FACTUAL BACKGROUND

The individual plaintiffs, Stanley "Duke" Bennett, Richard Howard, Susan Welch, Aaron Vance, and Warren de Wildt, are former employees of Wood Structures, Inc ("WSI"). (Second Amended Complaint ("Compl.")(Docket # 26) ¶1.) Plaintiff United Brotherhood of Carpenters and Joiners of America, Local 1996, was the collective bargaining representative of non-exempt hourly employees of Wood Structures, Inc., including Vance. (Compl. ¶ 10.) Together, Plaintiffs

2

bring this action claiming Defendants are liable under the Maine Severance Pay Act, 26 M.R.S.A. § 625-B (Count I), Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101 et seq. (Count II), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (Count III) and 26 M.R.S.A. § 626 (Count IV). They also seek to invoke the "remedy of piercing the corporate veil" in Count V.

Plaintiffs name four corporate defendants that they allege participated in the ownership and operation of WSI, their employer. Defendant Roark Capital Group, Inc., a corporation organized under the laws of Georgia, either was the majority stockholder of WSI or through its subsidiaries, Roark Capital Partners, LP, and Roark Capital Partners Parallel, LP, controlled RC Wood Structures Holding Corp., which was the majority owner of WSI. (Compl. ¶ 11.) In short, Roark Capital Group is a parent, grandparent, or great-grandparent corporation of WSI. Defendant Roark Capital Partners, LP, is a corporation organized under the laws of Delaware and a wholly-owned subsidiary of Roark Capital Group, Inc. (Compl. ¶ 12.) It owned 96.23% of RC Wood Structures Holding Corp., which owned 98.12% of WSI. Defendant Roark Capital Partners Parallel, LP, is a corporation organized under the laws of Delaware and is also a wholly-owned subsidiary of Roark Capital Group, Inc. (Compl. ¶ 13.) It owned 3.77% of RC Wood Structures Holding Corp., which owned 98.12% of WSI. Defendant RC Wood Structures Holding Corp. is a corporation organized under the laws of Delaware and a wholly-owned subsidiary of Roark Capital Partners, LP, and Roark Capital Partners Parallel, LP. (Compl. ¶ 14.) It owned 98.12% of WSI.

Plaintiff's Complaint also names one individual defendant: Frank Paul, a resident of the state of Maine, who was the president of and owned 1.88% of the stock of WSI. (Compl. ¶ 15.)

On or about March 16, 2009, WSI announced to employees who reported to work as scheduled that day that a Chapter 11 bankruptcy, which it had filed on March 3, 2009, was being converted to a liquidation under Chapter 7 of the bankruptcy code. As a result, WSI placed employees on an "unpaid leave of absence for the week beginning Monday, March 16," and announced that their future employment status would be determined by the bankruptcy trustee once the case was converted to Chapter 7. (Compl. ¶ 28.)

On or about March 18, 2009, WSI issued a "permanent layoff notice" to all of its employees that read: "the Company's bankruptcy petition will be converted to a Chapter 7 on or about March 18, 2009, and it is possible that the Bankruptcy Trustee will require layoffs on March 18, 2009, or within a 14 day period beginning on this date." (Compl. ¶ 29.) On or about March 30, 2009, the United States Trustee and Orix Finance Corporation, one of WSI's creditors, filed motions to convert the Chapter 11 petition to a Chapter 7 liquidation. (Compl. ¶ 30.) Neither WSI nor any of the Defendants opposed this motion. (Compl. ¶ 31.) On or about April 7, 2009, the bankruptcy court held a hearing and granted the motion to convert the case to a Chapter 7 liquidation. (Compl. ¶ 32.) Employees of WSI were never called back to work after March 16, 2009, nor informed that their jobs were terminated. (Compl. ¶ 33.)

After the individual plaintiffs were placed on indefinite unpaid leave in March 2009, they did receive correspondence from Roark Capital Group, Inc. and RC Wood Structures Holding Corp. regarding the continuation of their health care benefits pursuant to COBRA through CyberCore Technologies, another company owned by Roark Capital Group, Inc. (Compl. ¶ 44.)

At all relevant times Roark Capital Group, Inc. and RC Wood Structures Holding Corp. shared the same principal office address as WSI. (Compl. ¶ 34.) Roark Capital Group, Inc.

4

announced that it had acquired WSI on September 13, 2005. (Compl. ¶ 35.) On May 7, 2009, the Roark Capital Group website identified WSI as one of its "portfolio companies." (Compl. ¶ 37.)

At all relevant times, Jeffrey Keenan was president of Roark Capital Group, Inc. and president of RC Wood Structures Holding Corp., as well as an officer of WSI. (Compl. ¶ 38.) At all relevant times, Lawrence DeAngelo was a member of the board of directors of WSI and a managing director of Roark Capital Group, Inc., as well as a manager for RC Wood Structures Holding Corp. (Compl. ¶ 39.) At all relevant times, Susan Herzog was a member of the board of directors of WSI and vice-president of Roark Capital Group, Inc. (Compl. ¶ 40.) At all relevant times, Daniel Lonergan was vice-president and assistant secretary of WSI and an officer of Roark Wood Structures Holding Corp. (which later became RC Wood Structures Holding Corp.). (Compl. ¶ 41.)

In 2008 and 2009, Roark Capital Group, Inc. sent John P. Jordan, a senior analyst, and Michael Lee, a senior associate, to Maine where they worked on WSI's business operations, including reviewing all of WSI's accounting information, list of vendors, and accounts payable. (Compl. ¶ 42.) One or more of the Defendants was involved in critical decisions regarding the business operations of WSI, including leading negotiations with WSI's lenders. (Compl. ¶ 43.) One or more of the Defendants ultimately made the decisions to have WSI file for bankruptcy and not to oppose the motions filed by the Trustee and Orix to convert that filing to a Chapter 7 bankruptcy.

Plaintiff's Second Amended Complaint also alleges that WSI and one or more of the corporate Defendants had common management, common ownership, common directors and or

officers, and common personnel policies emanating from a common source. (Compl. ¶¶ 63-65 & 68.) Similarly, Plaintiffs allege one or more of the corporate Defendants exercised "de facto control over [WSI]" and "centralized control over [WSI]'s labor relations." (Compl. ¶ 67 & 68.)

## III. DISCUSSION

To the extent that the Magistrate Judge recommended the dismissal of Count I, I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no additional analysis is necessary. With respect to Counts III-V, the Court also similarly concludes that Defendants are not entitled to dismissal of Counts III-V and adopts the recommendations of the Magistrate Judge with respect to those three counts. (See Rec. Dec. (Docket # 43) at 14-19.)

What remains is Count II, in which Plaintiffs claim a violation of the WARN Act. The Recommended Decision correctly indicated two possible tests that might be used to determine if the named Defendants are liable under the WARN Act. (See Rec. Dec. at 13.) The first possibility is the integrated enterprise test. As set out in Romano v. U-Haul Int'l, 233 F.3d 655 (1st Cir. 2000), the integrated enterprise test includes four factors: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership." Id. at 662. As the First Circuit indicated in Romano, "control of labor operations, i.e., control of employment decisions is the most important of the four factors." Id. at 662.

The other possible test requires the Court to consider the degree of independence WSI had from its various parent corporations. This inquiry allows the Court to consider a non-exhaustive list of factors, including "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a

6

common source, and (v) the dependency of operations." Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1006 (9th Cir. 2004) (quoting Int'l Bd. Of Teamsters v. American Delivery Serv. Co., 50 F.3d 770, 775 (9th Cir. 1995)). Ultimately, under Childress, the question is: Did WSI have an insufficient degree of independence from one or more of the Defendants?

Given the significant overlap involved in both of these tests and the early stages of proceedings, the Court need not decide which test governs. Rather, under either test, the Court finds the factual allegations in the Second Amended Complaint and the reasonable inferences that can be drawn therefrom make a plausible claim for relief against the Defendants as parent corporations of WSI. Specifically, although paragraphs 62 through 69 of the Complaint contain somewhat boilerplate allegations, those allegations must be considered in the context of the more detailed, relevant factual allegations in paragraphs 34 through 43 and vice versa. Reading all of these paragraphs together, the Court believes Plaintiffs have a plausible claim that one or more Defendants exercised control over WSI's labor relations and ran WSI as an integrated enterprise. Alternatively, it is likewise plausible on its face that WSI did not have a sufficient degree of independence from one or more Defendants. Ultimately, Plaintiffs will have to put forward evidence to satisfy at least one of these tests for parent liability and it would be improper for the Court to consider the probability that there will be such evidence. Based on the plausibility of the allegations, Plaintiffs are entitled to conduct discovery to determine whether such evidence exists.

Notably, Defendants have repeatedly acknowledged in their original motion papers and at oral argument on the Recommended Decisions that there are similar tests for parent liability under both the WARN Act (Count II) and the ERISA (Count III). (See, e.g., Defs.' Obj (Docket # 47) at 2.) As a result, Defendants seek to have both claims dismissed, while Plaintiffs argue

7

that both claims should remain. In short, both sides agree the claims should be treated similarly at this juncture. In the Court's final assessment, Count II of Plaintiffs' Second Amended Complaint meets the pleading standard laid out by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u>. Therefore, the Court concludes that Count II, like Count III, survives Defendant's Motion to Dismiss.

## IV. CONCLUSION

Having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, it is hereby ORDERED that the Recommended Decision is hereby AFFIRMED IN PART and REJECTED IN PART. Based on the Court's *de novo* review, Defendants' Motion to Dismiss the Second Amended Complaint (Docket # 27) is GRANTED IN PART AND DENIED IN PART. Specifically, the Court hereby DISMISSES Count I only. As to all other counts, the Motion to Dismiss is DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 16th day of September, 2010.